PRESSMAN, Plaintiff-Appellee, v. MERRILL LYNCH, PIERCE, FENNER & BEANE, Defendant-Appellant.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 25218.  Decided December 9, 1960.

Mr. *Morton M. Stotter* and Mr. *John A. Elden, Jr.*, for plaintiff-appellee.

Messrs. *Jones, Day, Cockley & Reavis*, for defendant-appellant.

KOVACHY, J. This appeal comes to this court on questions of law from a judgment of $3982.08 and costs entered for the plaintiff in the Court of Common Pleas of Cuyahoga County. The cause was tried to the court, a jury having been waived. Motions for judgment were made by the plaintiff and the defendant at the close of all the evidence. Defendant's motion was overruled.

Plaintiff in her amended petition alleged, inter alia, that the defendant sold securities owned by her and in its possession without her consent, approval, direction or knowledge, and distributed the proceeds to someone other than herself or her nominee.

Defendant in its amended answer denied that it had in its possession or that it sold any securities owned by the plaintiff but admitted that it did sell the stock in question and that it did so without the consent, approval, direction or knowledge of the plaintiff.

There are the controlling facts: Gloria Hershey Pressman was living in Cleveland during December, 1953; her mother and aunt at that time lived together at 1611 Meridian Avenue, Miami Beach, Florida; some days before Christmas of that year, Gloria received a letter from her aunt with a check enclosed for from $25.00 to $30.00 containing the statement that the amount was small because she, the aunt, was going to buy her some stock as a gift; a "Statement of Security Account" with Merrill Lynch, Pierce, Fenner & Beane, the defendant, shows an account for the period ending January 29, 1954, under the caption "Miss Gloria Hershey, 1611 Meridian Avenue, Miami Beach, Fla." and contains the following entries:

|  | Debit | Credit |
|---|---|---|
| 1/21 Bought or Received 100 Florida Power Corp. | $2904.38 | |
| 1/22 Deposit (1/21) | | $2904.38 |

1/29 Sold or Delivered 100 Florida
       Power Corp.                           $2928.15
Balance                                    $2928.15;

a second "Statement of Security Account" for the period ending February 26, 1954, under the caption: "Miss Gloria Hershey % Samuel Rand Attorney Olympia Building Miami Fla" has these entries:

|  | Debit | Credit | Balance |
|---|---|---|---|
| Balance Jan 29th |  | $2928.15 |  |
| 2/8 Check 25 | $2928.15 |  | 00; |

a check in the amount of $2928.15 was issued by the Miami Beach, Florida Office of the defendant on February 5, 1954, to the order of Gloria Hershey; the back of the check bears the purported signature of Gloria Hershey and the signature of Leona Sacks; the signature of Leona Sacks was genuine, that of Gloria Hershey was not; Leona Sacks is the aunt of Gloria Hershey and a sister of her mother; the sisters lived in Florida together from 1948 until the latter part of January, 1954, when they separated because of a quarrel; the Samuel Rand designated in the second "Statement of Security Account" was the attorney for Leona Sacks; Gloria Hershey first learned of the existence of these transactions in May, 1955, while visiting her mother in Florida; her mother at that time showed her a statement from the defendant which had been received by her in March of 1954; the mother never transmitted the information to her daughter; Gloria Hershey at no time discussed the matter with her aunt; Gloria Hershey had lived in Florida during the year 1952 until the middle of 1953 but never at 1611 Meridian Avenue, Miami Beach; Gloria Hershey became Mrs. Wesley Pressman in May, 1954; neither the mother nor the aunt appeared as witnesses during the trial of this case; Gloria Hershey corresponded with the defendant after May, 1955; Gloria Hershey testified that she laid claim to the stock as a gift from her aunt.

    Appellant's assignment of error in this court is:

    "The trial court erred in failing to enter judgment for

defendant on the ground that plaintiff did not sustain her burden of proof."

Plaintiff, in essence, alleged in her amended petition that the defendant was guilty of conversion when it sold stock which she owned without her consent or knowledge.

Inasmuch as the plaintiff claimed the ownership of the stock by virtue of a gift inter vivos and the defendant in its answer admitted selling the stock in question without the consent or knowledge of the plaintiff, the only question for determination was whether the plaintiff owned the 100 shares of Florida Power Corporation stock as a result of a gift inter vivos from her aunt when the same was sold by the defendant without plaintiff's consent or knowledge.

If she did, the defendant was guilty of conversion and was responsible to her for damages, and if she did not, her claim against the defendant was without substance or fact and the defendant was entitled to a judgment in its favor as a matter of law.

The laws of Florida were applicable in the resolution of this question. 11 American Jurisprudence, 355, Conflict of Laws, Section 67.

Conversion is an act of dominion wrongfully asserted over another's property inconsistent with his ownership therein. 7 Florida Jurisprudence, 266, Conversion, Section 2.

The essential elements of a gift inter vivos are:

1. donative intent on the part of the donor
2. effective transfer of title or delivery
3. an actual or implied acceptance by donee.

15 Florida Jurisprudence, 192, Gifts, Section 11.

In 10 Florida Law and Practice, 419, 420, Gifts, Section 3 and 5, it is said:

. . . "The act necessary to constitute a gift is the donor's delivery of the property to the donee coupled with the donor's intent to relinquish dominion through passage of title." . . .

. . . "An effective delivery of a gift involves relinquishment by the donor of his dominion and control over the property." . . .

It is stated by the Supreme Court of Florida in the case of *Lowry* v. *Florida National Bank of Jacksonville,* 42 So. 2d, 368, headnote three:

"3. In order to make a valid inter vivos gift, there must be an intent to make a gift and a delivery of property with that intent."

In *Jones* v. *Ferguson,* 150 Florida, 313, 7 So. 2d, 464, syllabus one reads:

"1. Two essential elements of 'gifts inter vivos' are the intention of donor to relinquish dominion over the subject and delivery thereof to the donee."

And in *Eulette* v. *Merrill Lynch, Pierce, Fenner & Beane,* Fla., 101 So. 2d, 603, headnote one reads:

"1. To establish ownership by gift inter vivos, burden is upon party claiming gift to make a clear showing of a donative intent, delivery of possession and surrender dominion and control of the subject of gift."

It seems to us that the evidence in the record clearly shows that plaintiff's aunt planned to give her niece a gift of certain stock and started such plan by depositing the amount needed to purchase 100 shares of Florida Power Corporation stock with the defendant. An account in the name of the plaintiff carrying the aunt's home address was opened, and the above-named stock purchased. But the plan was abandoned before anything more was done in furtherance of it since the evidence is plain that within a week the account was placed "in care of" the aunt's attorney at his address, the stock was sold, and a check was issued which was endorsed by the aunt and cashed, thereby closing out the account. We believe that although the plaintiff's name appeared on the original account established with the defendant, the fact that this account bore the aunt's home address which was subsequently changed to "in care of" her attorney at his address and was closed out by a check endorsed by her, shows beyond question that the account from its inception was her account and that she retained full power to do with it as she saw fit. The subject matter of the intended gift, therefore, remained under the control of the aunt, and she retained complete dominion over it until it was sold by the defendant.

We hold from the above facts that no delivery of the subject matter of this purported gift had been made to the plaintiff. Thus, a gift inter vivos had not been consummated, and as a

consequence the plaintiff had never become the owner of the stock in question.

The plaintiff, as a result, did not sustain her burden of proof, and the trial court, as a matter of law, was in error in entering judgment in her favor.

The judgment, accordingly, is reversed and final judgment rendered in favor of the defendant-appellant.

Exceptions. Order See Journal.

HURD, P. J., and SKEEL, J., concur.